## Dozier v. Farrior, *et al.*

*Bill to Avoid a Foreclosure and for Redemption.*

(Decided May 14, 1914.   65 South. 364.)

1. *Mortgages; Foreclosure; Separate Parcels.*—Where parcels of mortgaged property are so situated that they can be conveniently sold separately, the general rule governing a sale in parcels under a decree and order of sale governs a sale under foreclosure by advertisement.

2. *Same.*—Where land has been laid out in parcels for separate enjoyment, and is mortgaged, it must be sold in parcels on foreclosure, and a sale en masse may be a sufficient reason for avoiding the sale where the price received is disproportionate to the actual value of the separate parcels.

3. *Same; Validity.*—Where personalty and land were sold en masse by a mortgagee under a power of sale, and the price received was much less than the real value of the property which had been dedicated to separate and distinct uses, equity will avoid the sale and permit the mortgagor or his heirs to exercise their equity of redemption.

4. *Same; Redemption.*—Where the mortgage conveyed distinct parcels of land and personal property, and the mortgagee under the power of sale contained in the mortgage sold all the land and personalty en masse, and on demand for a statement of the amount claimed to be due to redeem, the purchaser furnished an incorrect statement, the heirs of the deceased mortgagor could exercise the statutory right of redemption, and maintain a bill therefor without tender.

5. *Same.*—A foreclosure under a power of sale in the mortgage has the same effect on the equity of redemption as a strict foreclosure in equity.

6. *Same; Title of Purchaser.*—A purchaser of mortgaged property under a power of sale in the mortgage acquires no greater right than does the purchaser at a sale under a decree foreclosing a mortgage, as a general rule.

7. *Same; Annulment; Right of Purchaser.*—Where a sale under power in a mortgage is annulled, the purchaser at such sale is an

[Dozier v. Farrior, et al.]

assignee of the mortgage, and is accountable to the mortgagor on a bill to redeem just as the original mortgagee would have been if he had purchased at the sale.

8. *Same; Setting Aside; Laches.*—In ordinary cases the period within which a mortgagor may elect to disaffirm a sale under power contained in the mortgage is two years, and in the absence of special circumstances, after the lapse of that period, the court will presume that the mortgagor has elected to ratify the sale.

9. *Same.*—Under the circumstances of this case, the bill having been filed in less than eleven months after the sale to set the sale aside, and for leave to redeem, complainants were not guilty of lachs on the theory that during the interval they had elected to ratify the sale.

10. *Same; Mortgagee as Trustee; Power of Sale.*—A mortgagee is a trustee for the mortgagor, and he may not disregard the rights of the mortgagor in exercising the power of sale conferred by the mortgage; where the property brings a fair price, however, the mortgagor cannot complain.

11. *Equity; Pleading; Multifariousness.*—A bill to set aside a mortgage foreclosure sale under a power of sale, or, in the alternative, for leave to exercise the statutory right of redemption is saved from being multifarious by the provisions of section 3095, Code 1907.

APPEAL from Bullock Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Hattie Farrior and others against W. B. Dozier to declare void a foreclosure under power of sale in the mortgage, to set aside the sale, and for redemption, or in the alternative for statutory redemption. From a decree overruling demurrers to the bill, respondent appeals. Affirmed.

GEORGE W. PEACH and RAINER & ANDREWS, for appellant. Respondent was a stranger and purchased in strict accordance with the provision of the mortage; and hence, the equity of redemption is cut off.—*Little v. Zintz,* 2 Ala. 257. Complainants delayed to demand a statement and to file a bill, and thus ratified a sale.

J. D. NORMAN, for appellee. The bill is not multifarious.—§ 3095, Code 1907; *Belleview C. Co. v. McEvers,* 168 Ala. 540; *Moore v. Empire L. Co.,* 61 South. 940;

*Durr v. Hanover N. Bank,* 170 Ala. 260.  Under the circumstances in this case the sale en masse was improper and will be vacated.—*Mahone v. Williams,* 39 Ala. 216; *Johnson Bros. v. Selden,* 140 Ala. 422; 27 Cyc. 1480; Jones on Mortgages, 781; Wiltsie on Mortgage Foreclosure, § 488.  Respondent cannot claim as an innocent purchaser for value.—31 Am. St. Rep. 328.  The purchaser occupies the same position as the mortgagee and will be treated as an assignee of the mortgage and liable for waste.—*Caylor v. A. & M. Assn.,* 68 Ala. 229; *Sawyer v. Baker,* 77 Ala. 461.  Matters properly pleaded are taken as confessed on demurrer.—*Green v. Boaz,* 157 Ala. 68.

DE GRAFFENRIED, J.—We quote the following rules which, in our opinion, govern the principal questions presented by this record:

First.  "Where the parcels are so situated that they can be conveniently sold and conveyed separately, the general rule governing a sale in parcels under a *decree and order of sale* will govern a sale in a *foreclosure by advertisement.*"—Wiltsie on Mortgage Foreclosures, p. 900, § 796.

Second.  "It is a well-settled principle of law, irrespective of any statute, that, where a tract of mortgaged land has been laid out in parcels for *saparate* and *distinct* enjoyment, it should be sold in parcels on a decree of foreclosure.  *  *  *  A sale in a different manner may be a sufficient reason for avoiding the sale, if the price received is disproportionate to the actual value of the premises."—Wiltsie on Mortgage Foreclosures, p. 591, § 488.

1. Farrior and wife made a mortgage to one Frazer to secure the payment of two notes.  There were several *distinct* parcels of land and some personal property con-

veyed by the mortgage. Some of the distinct parcels of land had been dedicated by Farrior to separate and distinct uses. The lands were, in fact, town lots. Upon one of the lots Farrior had his residence. Upon another lot he had a two-story building, the lower story of which was used as a store, and the upper story as a public hall. Upon another of these lots was a frame building used as a store. Some of the other lots were vacant and were widely separated from the lots above described. The personalty consisted of a piano and a pianola.

Farrior died, and the mortgagee, under the power of sale contained in his mortgage, sold, after proper advertisement, all the lands and personalty en masse. W. B. Dozier bid the property in at the sale, and a deed was regularly made to him under the power contained in the mortgage.

2. The widow and son, who is the only heir of Farrior, the mortgagor, filed this bill in a double aspect. They first allege in the bill that, by selling the property en masse, a price greatly less than the real value of the property was obtained, and that, for this reason, the sale should be set aside, and complainants be allowed to redeem; and there is a prayer in the bill to that end. Complainants then allege that included in the property which was sold was the piano and pianola, that they have called upon Dozier for a statement of the amount which he claims to be due him for the purchase money of the land and other lawful charges thereon, and that he has furnished them a statement which is incorrect, because it contains no credit for the value of the piano and pianola which he obtained as a purchaser at said mortgage sale. Complainants then pray that, if the sale is not set aside, and they are not permitted to exercise the equity of redemption, then that they be permit-

[Dozier v. Farrior, et al.]

ted to exercise the statutory right of redemption, and to that end that the amount which they will be required to pay to exercise that right be ascertained. In so far as the facts set up in the bill are concerned, we may as well say, at this point, that if the facts alleged in the bill are true, the bill as a bill to exercise the statutory right of redemption can be maintained without a tender.—*Johnson v. Davis, et al.,* 180 Ala. 143, 60 South. 799.

3. If the allegations of the bill are true, then personalty and lots widely separated, some of them dedicated to *separate* and *distinct* uses, were all sold by the mortgagee under the power of sale in the mortgage, at one time en masse, and by that means were caused to bring a sum much less than their real value. If this allegation is true, then equity should avoid the sale and let the complainants in to exercise their equity of redemption.—Wiltsie on Mortgage Foreclosures, supra; *Mahone v. Williams,* 39 Ala. 202.

We direct attention to the limits of the rule which we now have under consideration. The lands must be in *"separate parcels, distinctly* marked for *separate* and *distinct* enjoyment,"* and such parcels, when so sold en masse, must bring at the sale an adequate price.—*Mahone v. Williams,* 39 Ala. 202.

A mortgagee is, in a sense, a trustee for the mortgagor, and, in exercising the power of sale contained in his mortgage, he must not disregard the rights of the mortgagor. The rule which we now have under discussion arises out of "the reasonable presumption, sanctioned by observation and experience, that such property," i. e., property in *distinct parcels, distinctly* marked for *separate* and *distinct* enjoyment, "will produce more when sold in parcels, because the sale is thus accommodated to the probable wants of purchasers."— *Mahone v. Williams, supra.*

Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain.

4. A foreclosure under the power contained in a mortgage has the same effect upon the equity of redemption as a strict foreclosure in a court of equity.—*Hunter v. Mellen,* 127 Ala. 343, 28 South. 468.

A purchaser of mortgaged property at a sale under the power contained in a mortgage can as a general rule, therefore, acquire no greater rights as such purchaser than a purchaser at a sale had under a decree of a court of equity foreclosing the mortgage. When, under a decree of foreslosure, a sale en masse is had of separate parcels of land devoted to separate and distinct uses, and the purchaser at such sale buys the property at a sum disproportionate to its real value, then, upon seasonable and appropriate application of the mortgagor, such sale will be set aside.—Wiltsie on Mortgage Foreclosures, supra.

It follows, of course, that when such a sale and purchase are had under the power of sale contained in a mortgage, the mortgagor, if the purchaser acquires the property at a sum disproportionate to its real value, may, by seasonable action, have the sale annulled.— Wiltsie on Mortgage Foreclosures, supra; *Stephens v. Clay,* 17 Colo. 489, 30 Pac. 43, 31 Am. St. Rep. 328.

5. Upon the annulment of such a sale, the purchaser is regarded as the assignee of the mortgage, and is accountable to the mortgagor, upon a bill filed to redeem, just as the original mortgagee would have been held to be accountable if he had bought at the sale. The purchaser simply steps into the shoes of the mortgagee. If he takes possession of the mortgaged premises, he is liable to the mortgagor for rents and profits, and for waste. *Lovelace v. Hutchinson,* 106 Ala. 417, 17 South. 623; *Sawyers v. Baker,* 77 Ala. 461.

6. Under the allegations of the bill, the complainants were not guilty of laches. The period which this court has adopted in ordinary cases within which a mortgagor may elect to disaffirm a sale of lands under a mortgage is two years.—*Alexander v. Hill,* 88 Ala. 487, 7 South 238, 16 Am. St. Rep. 55.

The theory upon which this court has proceeded in adopting the above period for ordinary cases is that *after* that period, in the absence of special circumstances, the court will presume that during that period the mortgagor elected to ratify the sale.

"The whole theory of the limitation, therefore, rests on the presumption of *ratification* after the lapse of two years *'in ordinary cases.'* "—*Alexander v. Hill, supra.*

The bill alleges that Farrior, the mortgagor, died in February, 1912; that the sale complained of was had in April, 1912, and the present bill was filed in March, 1913, a little less than 11 months after the sale. The complainants are the widow and only child of Farrior, and, when we consider that this sale was had within two months after the death of the husband and father, that it included the home in which the complainants lived and probably all of the other estate of the father, that complainants, by reason of the death of the head of the household, were probably confronted with problems which they, previous to that time, had not been required and were unaccustomed to face, and that they, nevertheless, within 11 months after the sale, filed this bill to avoid the sale, we think that we can safely affirm that there is nothing in the bill, tested on demurrer, which indicates a ratification of the sale by complainants. The bill, it is true alleges that the complainants demanded and received from the respondent a statement of the amount which he claimed to be due him as a *purchaser* at said mortgage sale; but the bill also shows that com-

plainants were then in doubt, and are yet in doubt, as to whether, under the facts as they may be shown to exist, they will be permitted to avoid the sale and exercise the equity of redemption which, in that event, will reside in them, or whether they will, by the courts, be held to possess and be permitted to exercise only the statutory right of redemption. In other words, it was necessary, in order that complainants might file the bill in the double aspect in which it was filed, for them to obtain from the respondent the amount which he claims to be due him as a *purchaser* at said sale. If, therefore, there has been a ratification by complainants of the sale, the averments of the bill, taken most strongly against complainants, fail to show it.

7. It is urged, however, that the bill is multifarious, in that, in one aspect of the bill, the complainants seek to exercise the equity of redemption, and, in another aspect of the bill, seek to exercise the statutory right of redemption. Section 3095, of the Code of 1907 provides that:

"Unless taken by demurrer, objection to a bill because of multifariousness must not be entertained. A bill is not multifarious which seeks alternative or inconsistent relief growing out of the same subject-matter or founded on the same contract or transaction, or relating to the same property between the same parties."

This court, prior to the adoption by the Legislature of the above statute, in several cases, declared that a complainant could not, in the same bill, attack, in one alternative of the bill, a conveyance or contract as void, and, in another alternative of the bill, claim rights under the conveyance or contract. In other words, this court, in the cases cited below, and in other kindred cases, declared that a complainant could not, in his bill of complaint, seek inconsistent reliefs, although the

reliefs prayed were sought against the same defendant and grew out of the same contract or transaction.—*Lehman v. Meyer,* 67 Ala. 396; *Moog v. Talcott,* 72 Ala. 210; *Meyer v. Bromberg,* 74 Ala. 524; *Caldwell v. King,* 76 Ala. 149; *Tatum Bros. v. Walker,* 77 Ala. 563; *Globe Q. R. & C. Co. v. Thatcher,* 87 Ala. 458, 6 South. 366.

It was this line of decisions which this quoted section of the Code was designed to reach.—Sims' Chancery Prac. §§ 246-248; *Durr v. Hanover Bank,* 170 Ala. 260, 53 South. 1012.

8. A careful examination of the questions presented by this record convinces us that the decree of the court below in overruling the demurrer to the bill and to parts of the bill is, in all things, correct, and the decree of the court below is therefore affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.