On March 26, 1975, defendants Roy E. George (George) and Jeannie A. George mortgaged nine parcels of property in Houston County and two parcels of property in Dale County, totaling 3,337.5 acres, to the Federal Land Bank of New Orleans (Federal)[1] to secure a promissory note in the amount of $1,158,000. Defendants were to make installment payments of $104,440.19, principal and interest, on March 1 of each subsequent year until 2010. Federal appraised the property at that time, setting its value at $1,667,000.
In 1979, defendants applied for an additional loan, again seeking to use their real property as collateral. They paid the Land Bank Appraisal Service $11,223 to appraise their property. According to this appraisal, the property was worth $2,299,000. However, this appraisal included property which was not secured by the first mortgage, but which defendants were not offering as security for the additional loan. Federal refused to make the additional loan.
From June 6, 1975, to January 12, 1981, defendants requested that Federal release nine parcels of property from the mortgage. In addition, defendants requested that timber from a tenth parcel be released from the mortgage. Federal allowed all these releases, leaving 783.5 acres covered by the mortgage.
Mr. George incurred hospital bills from January 1979, to March 1982, and, because of this fact, he was unable to make the March 1982 payment. He met with L.H. Patton, president of Federal's Houston County branch, and offered to pay the accrued interest if Federal would agree to waive payment of the accrued principal, *Page 434 
which amounted to approximately $35,000. Patton told George that he felt the remaining unreleased collateral was insufficient to justify restructuring the loan. George stated that, according to the 1979 appraisal, sufficient collateral remained under the mortgage to justify forgiving payment of the principal. In order to settle this disagreement, Federal and George entered into the following agreement:
 "(1) George will deposit in escrow with Lee 
McInish, Attorneys the sum of Ninety-One Thousand Fifty-Six and 54/100 ($91,056.54) Dollars, representing interest due as of June 25, 1982, for a period of ten (10) days from date, including July 11, 1982, to be disbursed as hereinafter set out.
 "(2) During said ten-day period, Bank will cause an appraisal to be made of the property now securing said mortgage and make a determination if same is sufficient security for restructure or reamortization. George agrees to pay Bank the sum of Two Hundred ($200.00) Dollars for such appraisal upon the execution of this agreement, the receipt of which is acknowledged by Bank.
 "(3) Within said ten (10) days, in the event Bank determines there is sufficient collateral, said loan will be restructured and reamortized, in which event Lee McInish, Attorneys are hereby authorized to pay and shall pay said amount held in escrow to Bank, which shall apply to the interest indebtedness. In the event said collateral is deemed insufficient and said loan is not restructured or reamortized, then George shall have the option to better secure said mortgage by collateral acceptable to Bank for such restructure and reamortization and upon failure to do so, Lee McInish, Attorneys are hereby authorized and shall return said sum deposited to George."
Patton appraised the property himself. His appraisal, completed on July 8, 1982, estimated the worth of the remaining unreleased property at $736,000. Because George refused to either make the full March 1982 payment or provide additional collateral, Federal instituted foreclosure proceedings against the property.
On August 23, 1982, the Dale County property was offered for sale in one tract of 157.5 acres. Federal was the high bidder, purchasing the property for $132,000. The same day, Federal offered the Houston County property for sale. Again, Federal was the high bidder, offering $604,973.01. George was present during both sales, but he did not bid on the property; neither did he object to either sale.
The total amount offered for the property by Federal left a deficiency of some $104,000 owing on the mortgage. Federal sued defendants in the Houston County Circuit Court to recover this deficiency. Defendants answered and filed a counterclaim charging Federal with fraud and negligence.
On July 20, 1984, the trial court granted summary judgment against defendants on all counts of their counterclaim. On October 31, 1984, Federal filed a motion for summary judgment, which the trial court granted on June 28, 1985. Defendants appeal from this final judgment and allege that the trial court erred by dismissing their counterclaim and by granting Federal's motion for summary judgment. We disagree.
Before we discuss defendants' contentions, we note that although the trial court characterized its ruling on defendants' counterclaim as dismissal, the court considered matters outside the pleadings; therefore, we will consider the ruling on the counterclaim to be a summary judgment. Rules 12(c) and 56, Ala.R.Civ.P.; Moore v. Watson,429 So.2d 1036 (Ala. 1983). Therefore, we will apply the principles applicable to summary judgment proceedings. Under Rule 56, Ala.R.Civ.P., before granting summary judgment, the trial court must determine that there is no genuine issue of a material fact, and that the moving party is entitled to judgment as a matter of law. Silk v. Merrill Lynch, Pierce, Fenner Smith, Inc., 437 So.2d 112 (Ala. 1983). The burden is upon the moving party to prove that there is not *Page 435 
even a scintilla of evidence supporting the position of the nonmovant. Id. This standard governs our review of this case.
 I
Defendants first contend that the trial court erred by dismissing counts III and VI of their counterclaim. Count III charges that Federal misrepresented that it would obtain a fair and impartial appraisal of the mortgaged property, and that in reliance upon this representation, defendants signed the contract authorizing Federal to do the appraisal.
Regardless of whether a representation is made willfully, recklessly, or mistakenly, actionable fraud is proven by showing (1) a false representation, (2) concerning a material existing fact, (3) upon which the plaintiff relied, and (4) as a proximate result was damaged. Code 1975, § 6-5-101;General Sales Co. v. Miller, 454 So.2d 532 (Ala. 1984); Burroughs Corp. v. Hall Affiliates, Inc.,423 So.2d 1348 (Ala. 1982). However, in order for a statement regarding a future event to constitute fraud, there must be circumstances present tending to show an actual intent to deceive at the time the representation is made. Ringer v.First National Bank of Stevenson, 291 Ala. 364,281 So.2d 261 (1973); Shepherd v. Kendrick, 236 Ala. 289,181 So. 782 (1938).
Defendants contend that the appraisal Federal conducted was not fair and impartial because Patton performed the appraisal himself, even though he had previously stated that he believed the collateral was insufficient to restructure defendants' loan. We do not believe this evidence shows actionable fraud.
In addition, there was insufficient evidence in the record to support a finding of fraud because defendants failed to show how they were injured by their contract with Federal. Federal was under no duty to reappraise the land. It could have foreclosed, under the terms of the mortgage, at any time once defendants were in default under their mortgage. Therefore, we conclude that the trial court was correct in granting summary judgment on defendants' fraud claim.
Count VI alleges that the 1979 appraisal conducted by Land Bank Appraisal Service, an agent of Federal, misrepresented the value of the property, and that, in reliance on the value as stated in this appraisal, defendants sought to have too much property released from the mortgage.
Essentially, defendants contend that Federal failed to retain sufficient collateral under the mortgage to insure that in 1982, three years after the appraisal, the value of the property would be sufficient for Federal to agree to forgive a $35,000 debt. There is no evidence in the record that at the time Federal granted the releases, it knew that at some point during the course of the loan, defendants would seek to have part of their debt forgiven.
In addition, under Alabama law a statement of value, such as a land appraisal, is generally considered to be a statement of opinion. Kaye v. Pawnee Const. Co., Inc.,680 F.2d 1360 (11th Cir. 1982), and there is nothing in the record to show that Federal made to the defendants any misrepresentation of fact upon which defendants relied to their detriment; therefore, the trial court did not err by granting summary judgment as to count VI.
 II
Defendants next contend that the trial court erred in granting the summary judgment as to counts IV and V of their counterclaim. Count IV claims that Federal negligently appraised defendants' property in 1979, and negligently released too much property to the defendants so that the debt became inadequately secured, and that as a result of the inadequate security the defendants were later unable to get a restructing of the loan.
There can be no actionable fraud without a breach of a legal duty. Bryant v. Morley, 406 So.2d 394 (Ala. 1981);Alabama Power Co. v. Laney, 428 So.2d 21 (Ala. 1983). Defendants contend that Lee v. *Page 436 Macon County Bank, 233 Ala. 522, 172 So. 662 (1937), implies a duty upon Federal to act in fairness and good faith in appraising the subject property. However, Lee has no application to this case because Lee dealt solely with a mortgagee's duty of fairness in conducting a foreclosure sale.
Further, Federal, as mortgagee, was under no duty to insure that it retain enough property under its mortgage to insure that at any point during the term of the mortgage defendants could restructure their loan; therefore, we affirm the trial court's judgment on this point as well.
Count V charges that Federal permitted Patton to reappraise the property even though he had already stated that he felt the property was of insufficient value, and that this amounted to negligence. As has been pointed out, Federal was under no duty to reappraise defendants' property; however, once it volunteered to perform the reappraisal, the law implied a duty upon it to perform it with due care. Berkel Company,Contractors, Inc. v. Providence Hospital, 454 So.2d 496
(Ala. 1984). However, there is no evidence in the record to show that the appraisal was done improperly. For instance, there was no evidence presented which showed that the land was incorrectly valued. Defendants charge that plaintiff appraised the property too high in 1979 in determining value for release purposes, and appraised the property too low for the purpose of determining if the loan would or could be restructured; however, there must be a contract, either express or implied, to impose a duty on Federal. Under our facts, the only contract involved was the agreement of Federal to make appraisals, but only for the purpose of making a determination of value. Therefore, the trial court properly granted summary judgment as to count V of the counterclaim.
 III
Finally, defendants argue that the Houston County property should have been offered for sale in separate tracts rather than in one unit, and summary judgment was inappropriate.
In Ames v. Pardue, 389 So.2d 927 (Ala. 1980), this Court stated:
 "It is the rule in Alabama that a mortgagee is responsible to the mortgagor for the fairness of the manner of the foreclosure sale. If the property concerned consists of separate parcels which are dedicated to separate and distinct uses, the parcels should be offered separately first in order to obtain the highest possible price for the property and to give the mortgagor a chance to retain some of his property. Dozier v. Farrior, 187 Ala. 181, 65 So. 364 (1914).
 "This rule applies if the property covered by the mortgage is separated into distinct parcels either by natural boundaries, by the way in which it is platted, or by the fact that the parcels are not contiguous. Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 (1928).
 "A foreclosure sale held under a power of sale may be set aside under this rule. Dozier v. Farrior, supra. A power of sale is more than a mere clause in a legal contract and equity regards a mortgagee holding a power of sale as a quasi trustee with a duty of fairness and good faith to the mortgagor in its execution. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105 (1920). To void the foreclosure sale, the mortgagor must show that the trust imposed on the mortgagee has been abused and that he has been injured by the sale. Rudisill v. Buckner, 244 Ala. 653, 656, 15 So.2d 333 (1943).
 "A mortgagee's equitable duty to offer first by parcels cannot be abrogated by a general provision of the power of sale giving the mortgagee discretion to hold a sale 'when, as and where it shall seem best to them.' Bank of New Brockton v. Dunnavant, supra, 204 Ala. at 639, 87 So. at 106." (Emphasis added.)
Ames v. Pardue, 389 So.2d at 930-31.
Defendants failed to present any evidence tending to show that the Houston County property is divided by natural *Page 437 boundaries, or by the way it was platted. The parcels are not contiguous; therefore, the trial court did not err, and the summary judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES and BEATTY, JJ., concur.
 ON APPLICATION FOR REHEARING
On original deliverance, this Court stated the following:
 "Defendants failed to present any evidence tending to show that the Houston County property is divided by natural boundaries, or by the way it was platted. The parcels are not contiguous; therefore, the trial court did not err, and the summary judgment is due to be, and it hereby is, affirmed."
On application for rehearing, appellants correctly point out that this paragraph unfortunately contains an incorrect statement of fact, in that the record shows that the tracts of property in Houston County were divided by naturalboundaries and by the way the property was platted;
therefore, we necessarily, on rehearing, address appellants' claim that the mortgagor should have offered the Houston County property for sale in separate parcels rather than en masse.
After reviewing further the law regarding the duty on the mortgagee to offer mortgaged property for sale by separate parcels rather than en masse, we have applied that law to the particular facts of this case, and we are of the opinion that the trial court erred in granting summary judgment in favor of the mortgagee on that aspect of the mortgagors' claim. The mortgagee did not offer the Houston County property for sale in separate parcels rather than en masse.
The law states that when property subject to a mortgage consists of distinct tracts, the mortgagee, as a quasi trustee, has a duty first to offer the property for sale as parcels rather than en masse. The reason for this rule
 "is that a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all."
J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443,455, 212 So.2d 831, 843 (1968). See also Ames v.Pardue, 389 So.2d 927 (Ala. 1980); Conway v.Andrews, 286 Ala. 28, 236 So.2d 687 (1970); Warren v.Ellison, 250 Ala. 484, 35 So.2d 166 (1948); Rodgers v.Dixon, 239 Ala. 72, 193 So. 741 (1940); Lee v. MaconCounty Bank, 233 Ala. 522, 172 So. 662 (1937); Kellyv. Carmichael, 217 Ala. 534, 117 So. 67 (1928).
Mortgagee argues, nevertheless, that, under the facts of this case, the mortgagors should be estopped to raise the question of whether the mortgagee should have offered the Houston County property for sale in separate parcels rather than en masse; still, in view of the fact that the Houston County property was divided by natural boundaries or by the way it was platted, our original affirmance of the summary judgment is due to be set aside.
We grant rehearing on this aspect of the case and reverse the judgment of the trial court, and remand the cause for a trial, under the principles of law set forth in Ames v.Pardue, 389 So.2d 927 (Ala. 1980), in order to allow the mortgagors to show, if they can, that "the trust imposed on the mortgagee has been abused and that [they have] been injured by the sale." Ames, at 931.
Likewise, the mortgagee will be allowed to show, if it can, that it acted in good faith and in fairness in the manner in which it conducted the foreclosure sale, and that the mortgagors should be estopped to object to the manner of sale, under the principles of law set forth in Ames v. Pardue,supra. Although the mortgagors, insofar as we can tell, did not specifically object to the manner of sale until they filed their motion to reconsider the grant of summary judgment against them, we believe *Page 438 
that the allegations in the counterclaims were sufficient to put the mortgagee on notice that they were contending that the mortgagee had failed to deal with them fairly; therefore, we believe there is some evidence to support the mortgagors' claim that they seasonably objected to the manner of the foreclosure sale.
Based on the above, we grant rehearing and reverse the judgment of the trial court for a trial on the mortgagors' claim that the foreclosure sale should be set aside because the mortgagee failed to act fairly in the manner in which the foreclosure sale was conducted. Otherwise, the application for rehearing is due to be denied.
APPLICATION FOR REHEARING GRANTED, IN PART, AND DENIED, IN PART; ORIGINAL JUDGMENT OF AFFIRMANCE SET ASIDE; AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., not sitting.
[1] The Federal Land Bank of Jackson is the successor to, and assignee of all rights of, the Federal Land Bank of New Orleans.